IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANTHONY FRANCOIS,<br>Petitioner, | § § § § | |
| v. | § § § | NO. 4:10-CV-00837 |
| BOBBY LUMPKIN,<br>Director, Texas Department of<br>Criminal Justice, Correctional<br>Institutions Division,<br>Respondent. | § § § § § § | THIS IS A CAPITAL CASE. |

## MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO
## FEDERAL RULE OF CIVIL PROCEDURE 59(e)

STANLEY G. SCHNEIDER
STANLEY & McKINNEY, P.C.
TBN: 17790500
440 Louisiana, Suite 800
Houston, Texas 77002
713-951-9994 Office
713-224-6008 Fax
E-mail: stans3112@aol.com

Attorney for Petitioner,
ANTHONY FRANCOIS

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................1

II.  RELEVANT FACTS AND PROCEDURAL HISTORY...............................2

III. DISCUSSION.................................................................................6

   A.   Standards for granting a Rule 59(e) motion.................................6

   B.   The Court erred in failing to consider Mr. Francois' request for a stay and abeyance to exhaust any procedurally defaulted claims in state court...................7

   C.   Because Mr. Francois was deprived of any meaningful opportunity to litigate his ineffective assistance of trial claims in both state and federal court, a stay and abeyance is necessary to prevent manifest injustice. ...............8

     1.   State habeas counsel was ineffective. ..........................................9

     2.   Mr. Francois' ineffective assistance of trial counsel claims are well-founded. ..........................................................................................14

   D.   The Court should reconsider its judgment and grant a stay and abeyance based on an intervening change in the controlling law. .......................................23

   E.   Mr. Francois satisfies the requirements for a *Rhines* stay..........................28

     1.   There is good cause for failure to exhaust the claims in state court. ..........28

     2.   The claims are not plainly meritless...........................................30

     3.   Mr. Francois has not abusively or intentionally engaged in delay. ............32

   F.   Granting a stay and abeyance would promote the goals of judicial economy and federalism...................................................................................33

IV.  CONCLUSION ............................................................................34

## I. INTRODUCTION

Petitioner, Anthony Francois, respectfully moves this Court to alter or amend its judgment of May 17, 2021, denying all relief in his case and denying a certificate of appealability (COA). Specifically, Mr. Francois asks this Court to reconsider the requests he brought in light of *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013), that the Court conduct an evidentiary hearing on his ineffectiveness claims or stay and abate the proceedings to allow the exhaustion of claims in state court.

The recent Supreme Court decision in *Andrus v. Texas*, 590 U.S.____, 140 S. Ct. 1875 (2020), as well as compelling new information regarding Mr. Francois' state postconviction counsel, James "Sid" Crowley, highlight why a return to state court is appropriate. Given Mr. Crowley's indisputably inadequate representation, Mr. Francois has, until now, been deprived of any meaningful opportunity to litigate ineffective assistance of trial claims. A stay and abeyance is thus necessary to prevent manifest injustice and to effectuate the equitable policy underlying *Martinez* that a state prisoner be allowed one full and fair opportunity to raise ineffective assistance of trial counsel claims.

A stay and abeyance is further warranted because there is a reasonable basis to believe that Mr. Francois falls within the category of individuals exempted from the death penalty due to intellectual disability. Thus, upon returning to state court,

Mr. Francois could benefit from the intervening change in controlling law brought about by *Moore v. Texas*, 581 U.S. __, 137 S. Ct. 1039 (2017) ("*Moore I*") and *Moore v. Texas*, 139 S. Ct. 666 (2019) ("*Moore II*"), which had the effect of removing Texas's unconstitutional restrictions on the class of persons protected under *Atkins v. Virginia*, 536 U.S. 304 (2002).

In support of his motion, Mr. Francois shows as follows:

## II.  RELEVANT FACTS AND PROCEDURAL HISTORY

On July 28, 2004, the 339th Judicial District Court of Harris County, Texas sentenced Mr. Francois to death. The Texas Court of Criminal Appeals (CCA) affirmed Mr. Francois' conviction and sentence on September 13, 2006. James "Sid" Crowley—an attorney with a long history of providing substandard representation in capital cases—represented Mr. Francois in state habeas proceedings.

In 2002, Mr. Crowley was identified as one of the worst capital defense lawyers in Texas after filing grossly deficient state habeas petitions in multiple cases.[1] In the case of *Ex parte Nenno*,[2] for example, he filed an eight-page petition raising only two record-based claims. Notably, one of those claims was factually

---

[1] *See* Texas Defender Service, *Lethal Indifference: The Fatal Combination of Incompetent Attorneys and Unaccountable Courts in Texas Death Penalty Appeals* 19-20 (2002) (hereinafter "*Lethal Indifference*"), available at https://www.texasdefender.org/wp-content/uploads/2019/12/Lethal-Indiff_web.pdf (last visited June 10, 2021).

[2] *Ex parte Nenno*, Writ No. 50,598 (Tex. Crim. App. Nov. 14, 2001).

inconsistent with the trial record, suggesting he had never even read the record.[3] Mr. Crowley filed similarly inadequate habeas petitions in at least four other cases.[4]

In January 2005, the State Bar of Texas instituted disciplinary proceedings against Mr. Crowley for failing to file a timely appeal brief on behalf of his client George S. Guo.[5] In December of that same year, a district court in Matagorda County removed Mr. Crowley as counsel in the capital trial of Francisco Castellano, finding he had provided ineffective assistance in preparing for trial.

On January 23, 2006, approximately one month after his removal from the Castellano case, Mr. Crowley filed a state habeas application on behalf of Mr. Francois. Court records indicate he began reviewing Mr. Francois' case only six weeks earlier, when he checked out the case file from the court. The application is twenty-five pages long and contains two record-based claims for relief.

A few months later, a Fort Bend district court publicly reprimanded Mr. Crowley due to his failings in the Guo case, finding he had committed multiple violations of the Texas Disciplinary Rules of Professional Conduct.[6]

---

[3] *Lethal Indifference*, *supra* note 1, at 19-20.

[4] *Id*. (discussing Mr. Crowley's representation in *Ex parte Rousseau*, Writ No. 43,534-01 (Tex. Crim. App. Dec. 1, 1999); *Ex parte Villareal*, Writ No. 50,599 (Tex. Crim. App. Oct. 31, 2001); *Ex parte Arthur*, Application for Writ of Habeas Corpus. No. 763189 (Tex. Dist. Ct. 180th Jud. Dist. Nov. 17, 1999); *Ex parte Smith*, Writ No. 48,130 (Tex. Crim. App. Jan. 17, 2001)).

[5] *See* Doc. 27-4 (Exhibit 4 to Petitioner's Advisory Concerning the *Impact of Martinez v. Ryan*).

[6] Doc. 27-4; Doc. 28 (Supplement to Exhibit 4 to Petitioner's Advisory Concerning the *Impact of Martinez v. Ryan*).

The CCA denied Mr. Francois' state habeas application on March 11, 2009. Mr. Francois' initial federal habeas petition was filed on March 9, 2010, and an amended petition was filed on June 6, 2010.

On March 20, 2012, the United States Supreme Court decided *Martinez v. Ryan*, 566 U.S. 1, 14 (2012), holding that the ineffectiveness of state habeas counsel may constitute cause to excuse the default of substantial ineffective assistance of trial counsel claims. On June 25, 2012, Mr. Francois filed an advisory on the impact of *Martinez* (Doc. 27), arguing that his state habeas counsel "did not conduct a meaningful investigation of his trial, direct appeal or the allegations against Petitioner," that state habeas counsel simply rehashed the record-based arguments raised on direct appeal, and that "the very essence of *Martinez* is presented in this case." (Doc. 27, at 3, 12). Given state habeas counsel's incontrovertible track record of inadequate representation in capital cases, Mr. Francois requested a hearing on his ineffective assistance of counsel claims, and alternatively, that the court "abate the habeas proceedings and allow Petitioner to return to State court to exhaust any claims and allow him to file his state writ anew." (Doc. 27, at 14). In his supplemental briefing, Respondent argued that *Martinez*'s holding does not apply in Texas, but also expressly acknowledged that *Martinez* could provide the basis for a stay and abeyance to allow Mr. Francois to raise his unexhausted claims in state court. (Doc. 26, at 9).

A year later, the Supreme Court held in *Trevino v. Thaler*, 569 U.S. 413, 429 (2013), that *Martinez* applies with equal force to Texas habeas petitioners. On June 6, 2013, Mr. Francois filed an advisory on the impact of *Trevino*, again urging the Court to conduct an evidentiary hearing on his ineffectiveness claims or stay and hold the proceedings in abeyance to allow the exhaustion of claims in state court. (Doc. 29). Respondent did not file any supplemental briefing addressing the applicability of *Trevino* or respond to Mr. Francois' second request for an evidentiary proceeding or for a stay and abeyance of the proceedings.

The ramifications of Mr. Crowley's substandard representation in numerous capital cases continue to unfold. Just last year, in *Andrus v. Texas*, 590 U.S.___, 140 S. Ct. 1875 (2020), the Supreme Court held that Mr. Crowley's abysmal representation in a Texas capital trial irrefutably satisfied the deficient performance prong of the standard for ineffective assistance under *Strickland v. Washington*, 466 U.S. 668 (1984). The Court found that Mr. Crowley not only failed to present compelling mitigation evidence to the jury, "he failed even to look for it." *Andrus*, 140 S. Ct. at 1878. The Court equally faulted Mr. Crowley for failing "adequately to investigate the State's aggravating evidence, thereby forgoing critical opportunities to rebut the case in aggravation." *Id.* at 1881–82.

Despite Mr. Crowley's similar nonfeasance in Mr. Francois' state habeas proceeding, on May 17, 2021, the Court issued a memorandum opinion denying all

relief and denying a certificate of appealability without affording Mr. Francois the opportunity to return to state court or present evidence in these proceedings of Mr. Crowley's dysfunction and the ensuing consequences.

## III. DISCUSSION

### A. Standards for granting a Rule 59(e) motion

Pursuant to Fed. R. Civ. Proc. 59(e), the Court has authority to alter or amend its judgement upon a motion filed within 28 from the entry of judgment. *Banister v. Davis*, 140 S. Ct. 1698, 1703, 207 L. Ed. 2d 58 (2020). "The Rule enables a district court to rectify its own mistakes in the period immediately following its decision," *id*. (internal citation and quotation marks omitted), and ensures "[a] state prisoner is entitled to one fair opportunity to seek federal habeas relief from his conviction." *Id.* at 1702.

Courts "have a great deal of discretion in ruling on a 59(e) motion," and may grant a motion based on "(1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct clear error or prevent manifest injustice. *See In re Benjamin Moore & Co.,* 318 F.3d 626, 629 (5th Cir.2002)." *Jones v. Stephens*, 998 F. Supp. 2d 529, 536 (N.D. Tex. 2014). What constitutes manifest injustice is a "case-by-case decision based on equitable considerations." *Id*. Courts have recognized that manifest injustice occurs where a court's decision "would lead to a result that is both inequitable and not in line with

6

applicable policy." *Alvarado v. Texas Rangers*, No. EP-03-CA-0305-FM, 2005 WL 1420846, at *3 (W.D. Tex. June 14, 2005) (quoting *Bunting Bearings Corp.*, 321 B.R. 420 (Bankr.N.D.Oh.2004)). In deciding a Rule 59(e) motion, a court must consider not only the need for finality, but also the "the need to render just decisions on the basis of all the facts." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). *See also Jones*, 998 F. Supp. 2d at 536.

### B. The Court erred in failing to consider Mr. Francois' request for a stay and abeyance to exhaust any procedurally defaulted claims in state court.

The Court should reconsider its prior judgement because it failed to address the primary argument raised in Mr. Francois' post-*Martinez* and post-*Trevino* briefs—that because of the clear ineffectiveness of his state habeas counsel, the Court should either conduct an evidentiary hearing on his ineffectiveness claims or stay and hold the proceedings in abeyance so Mr. Francois can return to state court. While the Court did find that it would be futile to return to state court to exhaust the claim that trial counsel was ineffective for failing to object to judicial bias, the Court ignored Mr. Francois' broader argument that he should be allowed to file a new state habeas petition to exhaust "any" claims in state court. (Doc. 27, at 14; Doc. 29, at 13). Because the Court neither addressed this argument nor meaningfully considered the impact of *Martinez* and *Trevino* on these proceedings, Mr. Francois was deprived of his "one fair opportunity to seek federal habeas relief from his conviction."

*Banister*, at 1702. The Court's failure to address Mr. Francois' request for a stay and abeyance was particularly erroneous given that Respondent expressly conceded Mr. Francois may be entitled to a stay and abeyance under *Martinez*. (Doc. 26, at 9).

Furthermore, as discussed below, the Court should reconsider its judgment to prevent manifest injustice. Because of Sid Crowley's ineffectiveness, Mr. Francois was essentially without counsel during his state habeas proceedings and as a consequence, has been deprived of any meaningful opportunity to litigate his ineffective assistance of trial counsel claims in both state and federal court. Accordingly, the Court should grant a stay and abeyance to allow Mr. Francois to return to state court and exhaust any meritorious ineffectiveness claims that were defaulted due to Mr. Crowley's negligence. A stay and abeyance is further warranted because upon returning to state court, Mr. Francois may benefit from the intervening change in controlling law brought about by *Moore v. Texas*, 581 U.S. __, 137 S. Ct. 1039 (2017) ("*Moore I*") and *Moore v. Texas*, 139 S. Ct. 666 (2019) ("*Moore II*").

### C. Because Mr. Francois was deprived of any meaningful opportunity to litigate his ineffective assistance of trial claims in both state and federal court, a stay and abeyance is necessary to prevent manifest injustice.

This Court should reconsider its prior judgment and grant a stay and abeyance in order to prevent manifest injustice. *Jones*, 998 F. Supp. 2d at 536. A stay and abeyance is warranted because the available information indicates that (1) Mr.

Francois' state habeas counsel was clearly ineffective, and (2) Mr. Francois' ineffective assistance of trial counsel claims are well-founded.

## 1. State habeas counsel was ineffective.

As discussed above, Sid Crowley has a lengthy and well-known history of neglecting his duties towards his clients. In cases in which Mr. Crowley, a former prosecutor, represented defendants at trial, he worked closely with prosecutors to ensure that verdicts against his clients were not overturned. For example, federal habeas counsel for Terrence Andrus obtained emails regarding the case of Tamina Hamid, revealing that Mr. Crowley helped prosecutors prepare their answer to his client's state postconviction petition.[7] With respect to Mr. Andrus' own case, federal habeas counsel discovered that, not only had Mr. Crowley signed an affidavit prepared by the prosecutors and met with them extensively to prepare to testify at the evidentiary hearing held on the state postconviction petition, but when the CCA reversed the grant of relief recommended by the trial court, he went so far as to send a celebratory email to prosecutors stating, "I knew we were right," aligning himself with the State's interests and against those of his client.[8]

When representing clients in state post-conviction proceedings, Mr. Crowley was known for filing grossly deficient habeas applications raising only boilerplate

---

[7] *See Andrus v. Davis,* Petition for Writ of Habeas Corpus Pursuant to § 2254, Exh. 5, 4:19-CV-00717 (N.D. Texas).
[8] *Id.* at Exh. 7.

or record-based claims, without conducting any investigation or even reviewing the entire trial record.[9] In the case of Anibal Garcia Rousseau, Mr. Crowley acknowledged in an affidavit (provided in connection with Mr. Rousseau's 2000 federal habeas petition) that at the time he represented Mr. Rousseau in state postconviction proceedings, he was "not familiar with how to litigate a capital habeas corpus case and was not aware of the need to investigate facts outside of the trial record."[10] He explained that his representation of his client was limited to "reading the trial record, meeting with [his client], conducting legal research on the claims [he] had identified from the record and drafting an application."[11]

Mr. Crowley's performance in Mr. Francois' state habeas proceeding is consistent with his abysmal track record in other cases. Court records indicate that Mr. Crowley began reviewing Mr. Francois' case file only six weeks before filing the state habeas application, and the twenty-five-page application (the bulk of which is dedicated to recounting the procedural history) raises only two record-based claims. While Respondent has argued that Crowley "raised two well-briefed allegations," (Doc. 26, at 7), these purportedly "well-briefed" claims consisted of a boilerplate, generic challenge to Texas's capital sentencing scheme and a single case-specific allegation that trial counsel was ineffective for calling a particular

---

[9] *Lethal Indifference*, *supra* note 1, at 19-20.
[10] *Id*. at 20
[11] *Id*.

witness at the penalty phase. This case-specific claim is briefed in a total of three paragraphs.

Mr. Crowley represented Mr. Francois six years *after* he provided his affidavit in Mr. Rousseau's case, suggesting that—at the very least—Mr. Crowley had by that time become aware of the "need to investigate facts outside of the trial record" when litigating a capital case in state postconviction. Nonetheless, he conducted no extra-record investigation whatsoever in this case, not even bothering to retrieve trial counsels' files.[12]

Sadly, Mr. Crowley's history of deficient representation was not due simply to incompetence or lack of caring, but seems to have been the result of incapacitation caused by his own battles with severe alcohol abuse. An affidavit provided by a liquor store clerk to federal habeas counsel for Terrance Andrus in support of Mr. Andrus' Petition for Federal Habeas Corpus recounts how he had known Mr. Crowley as a customer dating back to 2008 until early 2019, during which time Mr. Crowley visited the liquor store twice a day, Monday through Friday, to purchase vodka or wine.[13] The observations of the store clerk revealed a tragic picture: the clerk stated that Mr. Crowley sometimes entered the store smelling of urine; other

---

[12] *See* Doc. 7 (February 15, 2011, Letter to Court from Jani Maselli)
[13] *See Andrus v. Davis,* Petition for Writ of Habeas Corpus Pursuant to § 2254, Exh. 7, 4:19-CV-00717 (N.D. Texas).

times, he had what appeared to be feces and urine stains on his clothes.[14] Obituaries for Mr. Crowley available online indicate that he passed away on April 16, 2019. [15] Although the clerk's personal observations of Mr. Crowley did not commence until 2008, given the severity of the problem he observed, it is evident that Mr. Crowley must have been struggling for some time before the clerk came to know him. Further, Mr. Crowley's series of professional failures around the time he filed the petition in Mr. Francois' case suggest that Mr. Crowley's personal struggles were already interfering with his ability to meet his professional obligations at the time of his representation of Mr. Francois.

Regardless of the cause of Mr. Crowley's failings, as others have commented, "[h]aving Sid Crowley as one's state habeas counsel was tantamount to having no counsel at all."[16] Here, Mr. Francois was essentially without counsel during state habeas proceedings and was thus deprived of any meaningful opportunity to raise his ineffective assistance of trial counsel claims. As Mr. Francois has previously argued, the very essence of *Martinez* is implicated in this case. (Doc. 29, at 2).

---

[14] *Id.*

[15] *See*, *e.g.*, https://beresfordfunerals.com/obituary/james-sidney-crowley. A memorial post by his sister, Carol Crowley, on a support forum for suicide loss survivors suggests that, tragically, Mr. Crowley may have taken his own life. *See* https://allianceofhope.org/memorials/sid-crowley/

[16] Chuck Lindell, Often-Criticized System of Private Lawyers Still in Place, After Legislation's Demise in Last Days of Session, AUSTIN AMERICAN-STATESMAN, June 9, 2007.

*Martinez* reflects an equitable judgment by the U.S. Supreme Court that capitally-sentenced state prisoners must be afforded full and unfettered access to at least one court to meaningfully challenge their convictions and sentences on the grounds that their trial counsel were ineffective under the Sixth Amendment. *See Martinez*, 566 U.S. at 10 (expressing its concern that "[w]hen an attorney errs in initial-review collateral proceedings, it is likely that no state court at any level will hear the prisoner's claim . . . [a]nd if counsel's errors in an initial-review collateral proceeding do not establish cause to excuse the procedural default in a federal habeas proceeding, no court will review the prisoner's claims"). Here, because of Mr. Crowley's dereliction of his duties, if the Court's judgment remains uncorrected, it is likely that "*no* court will review [Mr. Francois'] claims." *Id*. (emphasis added).

Accordingly, the Court should reconsider its decision denying all relief and grant a stay and abeyance to allow Mr. Francois to exhaust his claims in state court. Such an opportunity is necessary to vindicate the underlying policy of *Martinez* that a state prisoner be afforded at least one full and fair opportunity to raise ineffective assistance of trial counsel claims. It is also necessary to ensure that Mr. Francois has "one fair opportunity to seek federal habeas relief from his conviction," *Banister*, at 1702, and that the Court renders a "just decision[] on the basis of all the facts." *Templet*, 367 F.3d at 479. Failing to correct the Court's judgment would therefore "lead to a result that is both inequitable and not in line" with these important policy

interests. *Alvarado v. Texas Rangers*, No. EP-03-CA-0305-FM, 2005 WL 1420846, at *3; *Bunting Bearings Corp.*, 321 B.R. 420.

### 2. Mr. Francois' ineffective assistance of trial counsel claims are well-founded.

Furthermore, based on information that was available to both trial counsel and state habeas counsel, as well as the Supreme Court's recent guidance in *Andrus*, Mr. Francois' ineffectiveness claims are well-founded. Thus, providing Mr. Francois the opportunity to return to state court would not be futile.

The Supreme Court's analysis of Mr. Crowley's deficient performance in *Andrus* provides a useful framework for understanding the ineffectiveness both of Mr. Francois' trial counsel and of Mr. Crowley as his state postconviction counsel. Notably, while trial counsel in *Andrus* put forth *some* mitigation, *Andrus*, 140 S. Ct. at 1887, the Court recognized that it is not sufficient to uncover and present random pieces of mitigating evidence. Rather, the purpose of the mitigation presentation must be to construct a coherent counternarrative that has the "capacity to contextualize or counter the State's evidence. . . ." *Id.* at 1877.

Trial counsel for Mr. Francois did precisely what the Supreme Court found insufficient in *Andrus*: they presented a handful of mitigation witnesses who provided bits and pieces of information regarding certain aspects of Mr. Francois' life history. Although the mitigation witnesses provided snippets of information

regarding Mr. Francois' traumatic childhood, counsel developed no cohesive narrative about Mr. Francois' mitigation story. Nor did counsel present any expert testimony to contextualize the testimony provided by the mitigation witnesses and explain any connection between Mr. Francois' past experiences, mental health, and his subsequent criminal involvement. For example, a trauma expert could have explained how the type of chronic trauma, toxic stress, and adverse childhood experiences endured by Mr. Francois during his developmental years may impact an individual's brain development, mental health, and functioning.[17]

The Court in *Andrus* also emphasized that trial counsel needs not only to look for evidence in mitigation, but must also investigate the State's aggravating evidence so as to identify opportunities to "contextualize or counter the State's evidence . . . of . . . alleged incidences of past violence." *Andrus*, 140 S. Ct. at 1878. In Mr. Francois' case, the record makes plain that there was no comprehensive effort to identify "opportunities to rebut the case in aggravation." *Andrus* at 1881–82. Trial counsel made an inept attempt to rebut testimony regarding Mr. Francois' prior convictions for robbery, but given their lack of any robust investigation and

---

[17] *See, e.g.,* Kathy Wayland, *The Importance of Recognizing Trauma Throughout Capital Mitigation Investigations and Presentations*, 36 Hofstra L. Rev. 923 (2008) Deborah Weber and Cecil Reynolds, *Clinical Perspectives on Neurobiological Effects of Psychological Trauma,* Neuropsychology Review, Vol. 14, No. 2 (June 2004).

preparation, they instead provided the jury with additional aggravating evidence against Mr. Francois.[18]

Another example of a lost opportunity for rebutting the State's aggravating evidence is seen in trial counsel's handling of the extensive evidence presented by the State regarding Mr. Francois' juvenile conviction. The State repeatedly emphasized to the jury that Mr. Francois had been convicted of "murder,"[19] despite the fact that Mr. Francois was not the shooter and was convicted under the law of parties.[20] The record contains abundant red flags indicating that, had counsel conducted an adequate, independent investigation, there would have been many opportunities to develop evidence to "contextualize or counter the State's evidence," and effectively mitigate Mr. Francois' involvement in the shooting. For example, available evidence indicated that: the shooting victim had a history of physically assaulting Mr. Francois' co-defendant;[21] encountering the victim "meant trouble";[22] a witness made a report to police that the victim pointed a gun at Mr. Francois and his friends first;[23] the victim was physically much larger than Mr. Francois;[24] Mr. Francois and his two friends were vastly outnumbered by the victim and his ten to

---

[18] *See* 22 RR 52-59.
[19] *See* 20 RR 48, 22 RR 43, 22 RR 70.
[20] *See* 22 RR 43.
[21] 20 RR 49.
[22] 20 RR 38.
[23] 20 RR 58.
[24] 20 RR 48-49, 57-58.

twelve friends during the confrontation;[25] and Mr. Francois told police that his co-defendant took the gun from him because Mr. Francois was not going to shoot.[26] But because counsel had not conducted their own investigation and follow-up on this information, they were unable to develop an effective counternarrative mitigating Mr. Francois' involvement in the incident. For example, counsel were left flat-footed and unable to effectively counter a witness's testimony that she had not been in a position to see whether the victim had a gun, despite her initial statement to police that the victim had pointed a gun at Mr. Francois and his codefendant first.[27]

A further similarity between this case and *Andrus* is that in both cases, not only did trial counsel fail to investigate and rebut aggravating evidence connected with their client's juvenile convictions and commitment to the Texas Youth Commission ("TYC"), trial counsel also completely failed to recognize their client's time in TYC as a source of further compelling mitigation evidence. In *Andrus*, the Court observed that counsel failed to investigate or present evidence regarding the significant trauma Mr. Andrus suffered as a result of his confinement at TYC. *See* 140 S. Ct. at 1882. In Mr. Francois' case, there was ample publicly available information regarding the history of inhumane conditions at TYC during the 1970's and 1980's, which coincided with Mr. Francois' placement there in 1985.

---

[25] 20 RR 44.
[26] 20 RR 68.
[27] *See* 20 RR 58.

Specifically, during that time, the agency was under a settlement agreement arising from the 1974 decision in *Morales v. Thurman,* which decried both the physical and psychological damage inflicted upon juvenile inmates confined to TYC, and found that conditions at TYC violated the Eighth Amendment's prohibition on cruel and unusual punishment. *See Morales v. Thurman*, 383 F.Supp. 53, 77 (E.D. Tex. 1974). Moreover, consistent with the publicly available information about the inhumane conditions at TYC in general, trial counsel had access to specific information acquired by the mitigation specialist that indicated that Mr. Francois endured significant traumatic experiences while placed there. In addition, Mr. Francois' small stature[28] and physical disability[29] likely would have made him particularly vulnerable to victimization. Yet trial counsel failed to follow-up on these investigative leads and develop what could have proved to be additional, compelling evidence of trauma.

A key difference between *Andrus* and Mr. Francois' case is that, while both cases involved Sid Crowley as counsel, Mr. Crowley represented Mr. Andrus at trial but Mr. Francois in state postconviction. Thus, although Mr. Crowley's performance at Mr. Andrus' trial was irrefutably deficient, Mr. Andrus was fortunate to have

---

[28] Mr. Francois was estimated to be approximately 5'4" and 125-130 pounds around that time. *See* 20 RR 49.

[29] Mr. Francois was born with a congenital limb deficiency that required below the knee amputation when he was about six or seven years old. *See* 22 RR 77-79.

competent counsel in state post-conviction who thoroughly investigated his case and presented the "tidal wave" of mitigation evidence that should have been discovered at trial. *Andrus*, 140 S. Ct. at 1879. Mr. Francois, by contrast, was represented by Mr. Crowley in state post-conviction. Faced with a record that indicated a stunted and incohesive mitigation presentation at trial, Mr. Crowley did nothing to investigate the matter and further develop mitigation evidence, even though information in the record and trial counsel's files were replete with red flags that additional, compelling evidence could be found.

Perhaps most significantly, there are strong indicators that a claim that Mr. Francois has intellectually disability should have been investigated and pursued. Intellectual disability is a developmental disorder characterized by deficits in both intellectual and adaptive functioning, as expressed in conceptual, social, and practical adaptive skills.[30] In this case, information available[31] to both trial counsel and state habeas counsel suggests Mr. Francois may suffer from low intellectual functioning and reveals a history of significant deficits in adaptive functioning, including impaired conceptual, social and practical skills.[32] For example, with

---

[30] *See* American Association on Intellectual and Developmental Disorders, *Intellectual Disability: Definition, Classification, and Systems of Supports*, 1 (11th ed. 2010) ("AAIDD-11"); American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders,* 33 (5th Ed. 2013) ("DSM-5").

[31] According to a memo written by the defense mitigation specialist, there is a suggestion of low intellectual functioning and history of significant deficit in adaptive functioning.

[32] The DSM-5 provides the following descriptions of the types of adaptive skills involved in the conceptual, social and practical domains:

respect to the conceptual domain, Mr. Francois struggled academically from a young age and did poorly in school despite regular attendance. He typically functioned below grade level in reading and math and, by the time he entered TYC at age 17, his math and spelling were only at a third-grade level, and he was reading at a sixth or seventh grade level. Prior to entering TYC, he had been referred to the Contemporary Occupational Training Center ("COTC") before ultimately dropping out in ninth grade. Notably, the now-closed COTC was described by the Houston Independent School District as a vocational school for youth who were unable to function in a regular academic setting.[33]

TYC records available to both trial counsel and state habeas counsel indicate that in addition to poor conceptual skills, Mr. Francois exhibited impaired social and practical skills: he was a follower and did things because peers told him to; he had problems relating to others; he displayed limited coping skills and impulse control;

---

The *conceptual (academic) domain* involves competence in memory, language, reading, writing, math reasoning, acquisition of practical knowledge, problem solving, and judgment in novel situations, among others. …

The *social domain* involves awareness of others' thoughts, feelings, and experiences; empathy; interpersonal communication skills; friendship abilities; and social judgment, among others. …

The *practical domain* involves learning and self-management across life settings, including personal care, job responsibilities, money management, recreation, self-management of behavior, and school and work task organization, among others. DSM-5, at 37.

[33] https://www.houstonisd.org/Page/32488

he lacked insight into his behavior and feelings; he viewed others as threatening and often felt unsafe, causing him to act out in response; he was easily frustrated when confronted with difficulty completing a task; and he exhibited difficulty keeping up with his daily personal care without support. Other information indicated that Mr. Francois had difficulty remembering names and dates; he had trouble remembering simple rules and instructions; he wet the bed until he was 13 years old; and he exhibited difficulty understanding things that were explained to him.

In addition, Mr. Francois' life history indicates the presence of several significant risk factors for intellectual disability. Perhaps most significantly, he was born with a congenital birth defect (one leg significantly smaller and shorter than the other). Children with such structural birth defects have been found to have a substantially increased risk for having intellectual disability.[34] Mr. Francois' social history additionally suggests the presence of several other recognized risk factors for intellectual disability. For example, during the prenatal stage of development, Mr. Francois was exposed to parental immaturity and lack of preparation for parenting[35] (his mother was still a child when she became pregnant with Mr. Francois at age

---

[34] Jelliffe-Pawlowski LL, Shaw GM, Nelson V, Harris JA. *Risk of Mental Retardation Among Children Born with Birth Defects,* Arch Pediatr Adolesc Med. 2003 Jun;157(6):545-50 (available at https://pubmed.ncbi.nlm.nih.gov/12796234/)

[35] *See* AAIDD-11 at 60.

14);[36] and prenatal domestic violence[37] (Mr. Francois was conceived as the result of a rape).[38] In addition, Mr. Francois mother testified that she had a "very difficult" pregnancy,[39] suggesting that there may have been complications that could have resulted in additional prenatal and perinatal risk factors for intellectual disability.[40] During the post-natal stage of development, Mr. Francois was exposed to additional risk factors, most significantly, child abuse and domestic violence.[41]

In sum, available information makes evident that Mr. Francois could have brought well-founded ineffective assistance of trial counsel claims in state post-conviction relating to trial counsels' failures to effectively develop cohesive mitigation evidence, to investigate and present a counternarrative to the State's evidence in aggravation, and to investigate and pursue a claim that Mr. Francois has intellectual disability. Mr. Francois, however, lost the opportunity to pursue these claims when he was effectively without counsel due to Sid Crowley's abject failure to provide competent representation. A stay and abeyance to allow Mr. Francois to exhaust his claims in state court is thus necessary to prevent manifest injustice.

---

[36] 22 RR 75.
[37] *See* AAIDD-11 at 60.
[38] 22 RR 75.
[39] 22 RR 75.
[40] *See, generally*, AAIDD-11 at 60 (table listing prenatal, perinatal and postnatal risk factors for intellectual disability).
[41] *See* AAIDD-11 at 60; 22 RR 63-66, 79-80, 85-86.

**D. The Court should reconsider its judgment and grant a stay and abeyance based on an intervening change in the controlling law.**

The Court should grant this motion and reconsider its judgment because Mr. Francois may benefit from an intervening change in the controlling law brought about by *Moore I* and *Moore II*.

As discussed above, trial counsel failed to follow up on obvious indications that Mr. Francois may suffer from low intellectual and deficits in adaptive functioning, and neglected to investigate whether Mr. Francois was ineligible for the death penalty under *Atkins v. Virginia*, 536 U.S. 304 (2002). Based on the information currently available to undersigned counsel, there is a reasonable basis to believe that Mr. Francois falls within the category of individuals exempted from the death penalty due to intellectual disability. But even if Mr. Francois would not have succeeded on an intellectual disability claim at the time of trial, based on Texas's then-controlling standard for assessing such claims, *Moore I* and *Moore II* have significantly changed the legal landscape such that Mr. Francois now has a greater likelihood of success in pursuing an intellectual disability claim.

In *Atkins*, the Supreme Court held that the Eighth and Fourteenth Amendments place a substantive restriction on the power of a state to execute an intellectually disabled person. The *Atkins* decision, however, "'did not provide definitive procedural or substantive guides for determining when a person who

23

claims mental retardation' falls within the protection of the Eighth Amendment."
*Hall v. Florida*, 572 U.S. 701, 718 (2014) (quoting *Bobby v. Bies*, 556 U.S. 825, 831 (2009)). Instead, it "le[ft] to the State[s] the task of developing appropriate ways to enforce the constitutional restriction upon [their] execution of sentences." *Atkins*, 536 U.S. at 317 (quoting *Ford v. Wainwright*, 477 U.S. 399, 416-17 (1986)) (second and third alterations in original).

At the time of Mr. Francois' trial, intellectual disability claims in Texas were governed by the CCA's decision *Ex parte Briseno*, 135 S.W.3d 1 (2004). In *Moore I*, however, the Supreme Court unanimously rejected the *Briseno* standard because it "advanced lay perceptions of intellectual disability," *Moore I*, 137 S. Ct. at 1051-1052 and disregarded the "medical community's diagnostic framework." *Id.* at 1053 (quoting *Hall*, 134 S. Ct. at 2000). And in *Moore II*, the Supreme Court reiterated the importance of following current medical standards, finding the CCA had again relied on improper, non-clinical factors for assessing intellectual disability, such as the presence of adaptive strengths. *Moore II*, 139 S. Ct. at 670-671.

The CCA has since found several individuals to be intellectually disabled under *Moore I* and *Moore II* who were previously found *not* to be intellectually disabled under *Briseno*. *Ex parte Moore*, 587 S.W.3d 787, 788–89 (Tex. Crim. App. 2019) (granting relief on intellectual disability claim following *Moore II*); *Ex parte Henderson*, No. WR-37,658-03, 2020 WL 1870477 (Tex. Crim. App. Apr. 15, 2020)

(per curiam) (granting relief on a claim of intellectual disability upon reconsideration of the case in the light of *Moore v. Texas*); *cf. Ex parte Henderson*, No. WR-37,658-03, 2006 WL 167836 (Tex. Crim. App. Jan. 25, 2006) (per curiam) (adopting trial court's recommendation to deny intellectual disability claim); *Ex parte Lizcano*, No. 68,348-03, 2020 WL 5540165 (Tex. Crim. App. Sept. 16, 2020) (per curiam) (granting relief on a claim of intellectual disability upon remand of the case in the light of *Moore v. Texas*); *cf. Ex parte Lizcano*, No. 63,348-03, 2015 WL 2085190 (Tex. Crim. App. Apr. 15, 2015) (per curiam) (adopting trial court's recommendation to deny intellectual disability claim); *Ex parte Gutierrez*, No. WR-70,152-03, 2020 WL 6930823, at *1 (Tex. Crim. App. Nov. 25, 2020) (per curiam) (granting relief on a claim of intellectual disability upon remand of the case in the light of *Moore v. Texas*); *cf. Ex Parte Gutierrez,* No. WR-70,152-01 (Tex. Crim. App. October 1, 2008) (adopting trial court's recommendation to deny intellectual disability claim); *Ex parte Guevara*, No. WR-63,926-03 (Tex. Crim. App. Jun. 6, 2018) (per curiam) (granting relief on a claim of intellectual disability upon remand of the case in the light of *Moore v. Texas*); *cf. Ex parte Guevara*, No. WR-63,926-01 & WR-63,926-02 (Tex. Crim. App. 2007 (adopting trial court's recommendation to deny intellectual disability claim); *Ex parte Williams*, No. WR-71,296-03, 2020 WL 7234532 (Tex. Crim. App. Dec. 9, 2020) (granting relief on intellectual disability claim after *Moore*); *cf. Williams v. State*, 270 S.W.3d 112, 113-32 (Tex.

Crim. App. 2008) (finding the evidence was sufficient to support the jury's negative answer to the intellectual disability special issue in the punishment charge at trial). Thus, the *Moore* decisions had the effect of removing Texas' unconstitutional restrictions on the class of persons protected under *Atkins* and the Eighth Amendment, making it all the more likely that Mr. Francois falls within that protected class. Given the clear red flags for intellectual disability ignored by trial counsel and the change in the controlling law under *Moore I* and *Moore II*, this Court should stay these proceedings and allow Mr. Francois to pursue an intellectual disability claim in state court.

The fact that Mr. Francois did not raise an intellectual disability claim at any prior procedural stage does not diminish the likelihood of success; nor will the state court find his claim procedurally defaulted. Texas Code of Criminal Procedure article 11.071 § 5(a)(1) permits merits review of a subsequent application where the allegations establish that the claims "could not have been presented previously in a timely initial application or in a previously considered application filed under this article or Article 11.07 because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application." The CCA has expressly recognized the *Moore* cases as a new legal basis for relief within the meaning of this provision, permitting review of Eighth Amendment intellectual disability allegations raised in subsequent applications. *See Ex parte Bridgers*, No.

WR-45,179-05, 2021 WL 2346539 (Tex. Crim. App. June 9, 2021); *Ex parte Escobedo*, No. WR-56,815-03, 2020 WL 3469044 (Tex. Crim. App. June 24, 2020); *Ex parte Butler*, No. WR-41,121-03, 2019 WL 4464270 (Tex. Crim. App. Sept. 18, 2019); *Ex parte Gutierrez,* No. WR-70,152-03, 2019 WL 4318678 (Tex. Crim. App. Sept. 11, 2019); *Ex parte Milam*, No. WR-79,322-02, 2019 WL 109290 (Tex. Crim. App. Jan. 14, 2019); *Ex parte Segundo*, No. WR-70,963-02 (Tex. Crim. App. Oct. 31, 2018); *Ex parte Long*, No. WR-76,324-02, 2018 WL 3217506 (Tex. Crim. App. June 27, 2018); *Ex parte Guevara*, No. WR-63,926-03, 2018 WL 2717041 (Tex. Crim. App. June 6, 2018); *Ex parte Williams*, No. WR-71,296-03, 2018 WL 2717039 (Tex. Crim. App. June 5, 2018). Thus, returning to state court to raise and exhaust an intellectual disability claim would not be futile.

In one case, petitioner Geronimo Gutierrez unsuccessfully litigated an intellectual disability claim in state court, then presented the claim in his federal habeas petition, and then later expressly abandoned the claim. *Gutierrez v. Davis*, No. SA-09-CA-543-FB, 2016 WL 4079546, at *6 (W.D. Tex. July 29, 2016). Despite this waiver, the Fifth Circuit stayed Mr. Gutierrez's appeal from the district court's denial of relief, to allow him to return to state court and relitigate his intellectual disability claim based on *Moore I. Gutierrez v. Davis*, No. 16-70028, Order of August 30, 2017. On November 25, 2020, the CCA found Mr. Gutierrez satisfies the diagnostic criteria for intellectual disability and reformed his death

sentence to a sentence of life imprisonment. *Ex parte Gutierrez*, No. WR-70,152-03, 2020 WL 6930823, at *1 (Tex. Crim. App. Nov. 25, 2020). Like Mr. Gutierrez, Mr. Francois should not be deprived of the opportunity to litigate an intellectual disability claim in state court.

### E. Mr. Francois satisfies the requirements for a *Rhines* stay.

In *Rhines v. Weber*, 544 U.S. 269 (2005), the Supreme Court approved a mechanism for permitting federal habeas petitioners to return to state court to litigate unexhausted claims. Under *Rhines*, a federal district court may stay and hold the proceedings in abeyance when: "(1) the district court determines there was good cause for the petitioner's failure to exhaust his claims in state court; (2) the claim is not plainly meritless; and (3) there is no indication that the petitioner is engaging in abusive litigation tactics or intentional delay." *Young v. Stephens*, 795 F.3d 484, 495 (5th Cir. 2015) (citing *Rhines*, 544 U.S. at 277-78) (alterations and internal quotation marks omitted).

### 1. There is good cause for failure to exhaust the claims in state court.

The Fifth Circuit has held that *Rhines* did not require "good cause" in some "technical sense," but "rather intended [for] the district court [to] find 'good cause' in the equitable sense." *Ruiz v. Quarterman*, 504 F.3d 523, 529 n.17 (5th Cir. 2007). The requirement focuses on the reason for not presenting a claim in the state post-

conviction proceeding. Showing good cause requires "a reasonable excuse, supported by evidence to justify a petitioner's failure to exhaust." *Blake v. Baker*, 745 F.3d 977, 982 (9th Cir. 2014) (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005)). "Good cause for [a *Rhines* stay] should not require an extraordinary or unreasonable showing." *Lopez v. Stephens*, No. CV B-15-144, 2016 WL 4126014, at *4 (S.D. Tex. Apr. 25, 2016). As relevant here, good cause for a *Rhines* stay has been found based on ineffective assistance of state post-conviction counsel. *Blake v. Baker*, 745 F.3d 977, 983 (9th Cir. 2014); *see also Ruiz*, 504 F.3d at 529 n.17 (noting with apparent approval that the district court found good cause based on the deficiencies of state habeas counsel).

Mr. Francois was effectively without counsel when he was represented by Sid Crowley during his state post-conviction proceedings. Mr. Crowley raised only two record-based claims and failed to conduct any extra-record investigations. He ignored red flags that Mr. Francois may suffer from intellectual disability and failed to follow up on information that could have been used to mount a strong ineffective assistance of trial counsel claim, based on trial counsel's failure to present a compelling and cohesive mitigation case and failure to effectively counter the state's case in aggravation. *See supra*, at 14-22. Crowley's ineffectiveness in state postconviction proceedings constitutes good cause within the meaning of *Rhines*. *Blake*, 745 F.3d at 983; *Ruiz*, 504 F.3d at 529 n.17.

Additionally, good cause exists for a stay and abeyance because Mr. Francois may fall within the category of individuals who are exempted from the death penalty under the Eighth Amendment and *Atkins*, due to their diminished culpability and moral responsibility. As discussed above, available information provides strong indications that Mr. Francois has impairments in intellectual and adaptive functioning, and there is a significant likelihood that he may benefit from the change in controlling standards for intellectual disability determinations under *Moore I* and *Moore II*. Thus, good cause certainly exists in "the equitable sense," as Mr. Francois must have a full and "fair opportunity to show that the Constitution prohibits [his] execution," *Hall*, 572 U.S. at 724. Denying him this opportunity would "creat[e] an unacceptable risk that persons with intellectual disability will be executed." *Moore I*, 137 S. Ct. at 1044 (quoting *Hall*, 572 U.S. at 704). Indeed, the Fifth Circuit has previously found that a stay and abeyance was warranted to allow a federal habeas petitioner to litigate a previously abandoned intellectual disability claim in state court in the wake of *Moore I. Gutierrez v. Davis*, No. 16-70028, Order of August 30, 2017.

### 2. The claims are not plainly meritless.

To obtain a *Rhines* stay, Mr. Francois must show that at least one of his unexhausted claims is "potentially meritorious." 544 U.S. at 277. A claim is "potentially meritorious" under *Rhines* as long as it is not "plainly meritless." *Ibid*;

*accord Miller v. Dretke*, 431 F.3d 241, 254 (5th Cir. 2005). Under Fifth Circuit law on *Rhines*, a showing of merit refers not only to the elements of the constitutional violation asserted, but also to whether the CCA would authorize subsequent litigation in state court. *See Neville v. Dretke*, 423 F.3d 474, 480 (5th Cir. 2005). A *Rhines* movant must therefore show the colorability of: (1) the underlying constitutional claim; and (2) the argument that the TCCA would authorize the litigation.

Here, Mr. Francois seeks an opportunity to raise ineffective assistance of trial counsel claims based on the failure to adequately investigate and present compelling mitigation evidence, to effectively challenge the State's evidence in aggravation, and to investigate and litigate an intellectual disability claim despite obvious indications of impaired intellectual and adaptive functioning. Mr. Francois also seeks to litigate an intellectual disability claim in light of *Moore I* and *Moore II*. Given the Supreme Court's recent guidance in *Andrus* and the change in controlling law under the *Moore* cases, the ineffective assistance of trial counsel and intellectual disability claims Mr. Francois seeks to litigate in state court are "potentially meritorious" and not "plainly meritless." *Rhines*, 544 U.S. at 277.

Furthermore, there is a non-trivial chance that the CCA would authorize this litigation. As discussed above, the CCA has recognized that the *Moore* cases provide a new legal basis for relief within the meaning of Texas Code of Criminal Procedure

article 11.071 § 5(a)(1), and as such, has authorized subsequent habeas applications raising post-*Moore* intellectual disability claims in multiple cases. *See supra*, at 26-27. And given the Supreme Court's recent guidance in *Andrus* and Sid Crowley's indisputable history of deficient representation, this is also a non-trivial chance that the CCA would authorize subsequent litigation on any ineffective assistance of trial counsel claims that were defaulted as a result of Crowley's negligence.

### 3. Mr. Francois has not abusively or intentionally engaged in delay.

There is no indication that Mr. Francois has engaged in "abusive litigation tactics or intentional delay." *Rhines*, 544 U.S. at 278. In fact, Mr. Francois first asked this Court to stay the proceedings to allow him to return to state court nearly a decade ago, following the Supreme Court's decision in *Martinez*. He re-urged this request the following year, after the Supreme Court decided *Trevino*. The Court failed to adequately consider Mr. Francois' request, and he now requests a stay and abeyance for the third time. Simply asking the Court to meaningfully consider the arguments raised in his briefing via a timely-filed Rule 59(e) motion cannot be considered a delay tactic. Furthermore, it would be entirely appropriate for the Court to reconsider its judgment and grant a stay and abeyance to ensure that Mr. Francois has "one fair opportunity to seek federal habeas relief from his conviction," *Banister*, at 1702, and

that the Court renders a "just decision[] on the basis of all the facts." *Templet*, 367 F.3d at 479.

**F.** **Granting a stay and abeyance would promote the goals of judicial economy and federalism.**

Finally, the Court should grant a stay and abeyance because doing so would promote judicial efficiency. *See Landis v. North American Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). Allowing the state court to resolve Mr. Francois' case on the intellectual disability issue or any new ineffective assistance of counsel claims will obviate the need for further proceedings in either this Court or the Fifth Circuit.

Furthermore, allowing Mr. Francois to return to state court and exhaust any defaulted claims is entirely consistent with "AEDPA's goal of promoting comity, finality, and federalism by giving state courts the first opportunity to review [a] claim, and to correct any constitutional violation in the first instance." *Cullen v. Pinholster*, 563 U.S. 170, 185 (2011) (quoting *Jimenez v. Quarterman,* 555 U.S. 113, 121, (2009)). Because AEDPA presumes that "state courts are the principal forum for asserting constitutional challenges to state convictions," *Harrington v. Richter*, 562 U.S. 86, 103 (2011), and because Mr. Francois has a substantial chance

of being permitted to litigate his unexhausted claims in state court, granting a stay and abeyance in this case would promote both the interests of justice and federalism.

## IV.   CONCLUSION

WHEREFORE. Mr. Francois respectfully moves this Court to alter or amend its judgment of May 17, 2021, denying all relief in his case and denying a certificate of appealability, and asks this Court to reconsider his request to either conduct an evidentiary hearing on his ineffectiveness claims or stay and hold the proceedings in abeyance so that Mr. Francois can return to state court to litigate his unexhausted claims.

Date: June 14, 2021

Respectfully submitted,

SCHNEIDER & McKINNEY, P.C.

*/s/ STANLEY G. SCHNEIDER*
STANLEY G. SCHNEIDER
TBN: 17790500
440 Louisiana, Suite 800
Houston, Texas 77002
713-951-9994 Office
713-224-6008 Fax
E-mail: stans3112@aol.com

**Certificate of Service**

I hereby certify that a true and correct copy of the foregoing Petitioner's Motion to Alter or Amend Judgment Pursuant to Federal Rule of Civil Procedure 59(e) has been served by CM/ECF upon counsel for Respondent on this 14th day of June, 2021.

*/s/ STANLEY G. SCHNEIDER*
STANLEY G. SCHNEIDER